# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**UNITED STATES OF AMERICA**
   **Plaintiff,**

 v.                Case No. 11-CR-211

**ERIC LUCKETT**
   **Defendant.**

## DECISION AND ORDER

The government charged defendant Eric Luckett with possessing ammunition as a felon, contrary to 18 U.S.C. § 922(g)(1). Defendant moved to suppress statements he made following a traffic stop, arguing that the police violated his rights under Miranda v. Arizona by subjecting him to custodial interrogation without first providing the required advice of rights. The magistrate judge handling pre-trial proceedings in this case held an evidentiary hearing, at which one of the arresting officers testified, then issued a recommendation that the motion be granted. The government objected, requesting permission to supplement the record, and I held a supplemental hearing at which the government presented testimony from both of the officers involved in the stop and arrest. On de novo review of the entire record, see Fed. R. Crim. P. 59(b), I now grant defendant's motion to suppress.

## I. FACTS

On August 31, 2011, at about 6:20 p.m., Milwaukee police officers Phillip Ferguson and Andrew Holzem observed a minivan with a cracked windshield and rear window and bearing a temporary license plate that listed to a different vehicle. (Dec. 2, 2011 Evid. Hr'g Tr. [R. 25] at 5-8.) The officers stopped the vehicle, and Ferguson approached the passenger side while

Holzem made contact with the driver, later identified as defendant. (Id. at 8-9.) As the officers approached, they smelled the odor of recently burnt marijuana. (Id. at 9-10.) Holzem asked defendant to exit, and defendant complied. (Id. at 10.) As the officers escorted defendant to the rear of the minivan defendant stated, "I already smoked all of the weed." (Id. at 10, 28.) Holzem searched defendant and detained him in the back of the squad car. The officers ran a record check and learned that defendant was on probation for possession with intent to deliver. (Id. at 11, 29-30.) Defendant was not handcuffed at that time (id. at 39), but a person placed in the back seat of a police car cannot exit unless someone on the outside opens the door (or he kicks out the windows) (id. at 31).

The officers searched the vehicle for additional drugs, and Holzen immediately spotted a box of 9 mm ammunition between the driver and passenger seats. (Id. at 12-13.) The officers looked inside the box and observed that ten bullets were missing, leading them to suspect that some may have been loaded into the magazine of a firearm, which might be inside the vehicle. The officers continued their search, observing a pile of clothes, about five or six outfits, on the back seat of the vehicle. (Id. at 13-14.) The officers also observed a black plastic garbage bag on the rear passenger side floor. Ferguson checked inside the bag for marijuana or a weapon, finding more clothing and another box of ammunition, this time .357 caliber; this box had seven rounds missing. (Id. at 14-15, 19.)

Ferguson returned to the squad car where defendant was detained and asked defendant why he had so many clothes; defendant responded he was going to the laundromat. (Id. at 16-17, 33.) At that point, Ferguson had not yet determined who owned the van; he asked defendant if it was his van, and defendant responded that it was his girlfriend's. (Id. at 17.) Ferguson asked defendant if all the clothes were his, and defendant responded that they were.

2

All the clothing was male. (Id. at 17-18.) Defendant was then formally arrested for felon in possession of ammunition and transported to the district station. (Id. at 19.)[1]

## II. DISCUSSION

In order to protect the right against self-incrimination, the police must advise an individual of certain rights prior to subjecting him to custodial interrogation. Miranda v. Arizona, 384 U.S. 436, 444 (1966). Statements obtained in the absence of warnings may not be used in the government's case-in-chief. Id.

To implicate Miranda, the person must be both "in custody" and subject to "interrogation." United States v. Yusuff, 96 F.3d 982, 987 (7th Cir. 1996). A person is in custody for purposes of Miranda when his movement is restrained to the degree comparable to a formal arrest. Id. In the present case, the government concedes that defendant was in custody when Ferguson questioned him in the back of the police car. The issue is thus whether this questioning amounted to "interrogation" for purposes of Miranda.[2]

---

[1] At the hearing before the magistrate judge, Ferguson testified that after the arrest defendant's girlfriend arrived at the scene, the officers confirmed that she was the owner of the van, and they released the vehicle to her. (Id. at 20-21.) She took possession of the clothes and other contents of the vehicle except for the ammunition, which was retained by the officers. (Id. at 37.) However, at the supplemental hearing, the officers testified that while a person purporting to be defendant's girlfriend came to the scene, they could not confirm that she was the owner of the van and thus did not release it to her. Instead, it was towed away and, apparently, crushed after no one claimed it. (Jan. 23, 2012 Evid. Hr'g Tr. [R. 30] at 8-9, 13-14, 58-61.) At the supplemental hearing, Ferguson also made various corrections to his previous testimony (id. at 5-14), but none are material to the issues before me.

[2] At the hearing before the magistrate judge, Ferguson testified that defendant was "under arrest" when placed in the back of the squad car. (Dec. 2, 2011 Tr. at 30.) At the supplemental hearing, he attempted to clarify his earlier testimony, stating that defendant was not at that point under arrest but merely "detained" while the officers searched the car for drugs. (Jan. 23, 2012 Tr. at 12; see also id. at 61-62.) Because the determination of custody depends on objective circumstances, see United States v. James, 113 F.3d 721, 726 (7th Cir. 1997), the label an officer uses does not control. The objective circumstances of this

3

Interrogation includes both express questioning and its functional equivalent (i.e., any words or actions on the part of the police – other than those normally attendant to arrest and custody – that the police should know are reasonably likely to elicit an incriminating response from the suspect). Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980). The magistrate judge, citing United States v. Briggs, 273 F.3d 737, 741 (7th Cir. 2001), stated that the requirement that any utterance or action be reasonably likely to elicit an incriminating response from the suspect in order for it to be improper applies not only to statements and actions but also explicit questions. "Thus, an officer need not inform a person in custody of his rights under Miranda before asking questions that are either unlikely to elicit an incriminating response or are a normal part of the arrest procedure." (Recommendation at 4.)

The first part of the quoted statement is incorrect. As the Seventh Circuit has explained:

It is clear from the language, facts and context of Innis, that the Supreme Court defined interrogation as (1) express questioning; or (2) its functional equivalent; it defined the latter as any statements that "the police should know are reasonably likely to elicit an incriminating response from the suspect." Id. at 301. Thus, as the district court explained, Innis does nothing more than define when police practices, other than express questioning, constitute interrogation.

Smiley v. Thurmer, 542 F.3d 574, 582 (7th Cir. 2008).[3]

---

encounter demonstrate that defendant was not free to leave, and Officer Holzem admitted during the supplemental hearing that defendant was not, in fact, free to leave. (Id. at 68.) In any event, the government makes no attempt in its supplemental brief to argue that defendant was not in custody; rather, it focuses solely on interrogation.

[3]In Briggs, the Seventh Circuit did state in dicta that only questions that are reasonably likely to elicit an incriminating response from the suspect are improper. 273 F.3d at 741. However, the only direct question the officer asked in that case was to inquire what the defendant meant when he said he was "going to die." The court found that the officer reasonably inquired about the defendant's well-being, since failing to take proper precautions to prevent a prisoner's suicide might subject the state to liability. Id.; see also United States v. Cooper, 19 F.3d 1154, 1162-63 (7th Cir. 1994) (explaining that the police do not violate Miranda by responding to statements made by the suspect). In Thurmer, the Seventh Circuit

4

In the present case, Ferguson directly asked defendant about the clothes in the back of the van. This constituted interrogation under Miranda. Because defendant had not been provided his rights prior to responding that the clothes were his, his statements must be suppressed from use in the government's case-in-chief.

Courts have held that the police may ask "routine booking questions" without violating Miranda. See United States v. Monzon, 869 F.2d 338, 342 (7th Cir. 1989); see also Innis, 446 U.S. at 301 (excluding words and actions "normally attendant to arrest and custody" from the definition of interrogation). However, this does not mean that any question asked during the booking process is permissible. The police may not ask questions, even during booking, that are likely to elicit incriminatory admissions. E.g., United States v. Lewis, 685 F. Supp. 2d 935, 937-38 (E.D. Wis. 2010) (citing Pennsylvania v. Muniz, 496 U.S. 582, 602 n.14 (1990)).

In the present case, the government argues that the police asked about the clothes as part of their administrative responsibilities; they were simply trying to figure out what to do with the belongings in the van. I have some doubts that this argument even invokes the "booking question" exception. Booking is essentially a clerical procedure, typically occurring soon after the suspect arrives at the police station, id. at 938 (citing United States v. Mata–Abundiz, 717 F.2d 1277, 1280 (9th Cir. 1983)), and usually entails the collection of biographical information, see, e.g., Muniz, 496 U.S. at 601; United States v. Pacheco-Lopez, 531 F.3d 420, 423-24 (6th Cir. 2008). Here, the officers questioned defendant on the scene, immediately after discovering apparent contraband in the van, about the contents of the van. I further note that while Ferguson testified at the supplemental hearing that "our department states that we need

---

directly addressed the question of whether the Innis test applies to direct questions, holding that it does not.

5

to safeguard property" (Jan. 23, 2012 Tr. at 25), he was unable to identify any specifically applicable policy, much less explain how his actions furthered such policy. (Id. at 32.) Nor does it appear that the officers followed any specific inventory policy in towing the vehicle. Cf. United States v. Cartwright, 630 F.3d 610, 614 (7th Cir. 2010), cert. denied, 131 S. Ct. 2172 (2011). For instance, they made no list of the contents of the van; they simply had it towed to the city lot, where it was later crushed, the contents still inside.

Assuming, arguendo, that this type of on-the-scene questioning might be subject to the booking question exception, I find the exception inapplicable under the facts of this case. As the magistrate judge explained:

> Although the, Why so many clothes? question might initially seem a lot like benign small talk unlikely to elicit any sort of an incriminating response, it cannot be ignored that immediately before Ferguson asked the question, he had found the ammunition that forms part of the basis for the present indictment in a bag of clothes in the van. Thus, any expression of knowledge of the clothes tends to inculpate Luckett in the possession of the ammunition. Ferguson's subsequent explicit question as to whom did the clothes belong asked for Luckett to tie himself even closer to the ammunition. In the present context, both questions were reasonably likely to elicit incriminating responses, and thus both questions constituted interrogation under Miranda.
> . . .
> Thus, the court concludes that, under these circumstances where the relevant evidence was found amidst a bag of clothes, any inquiry about the clothes was reasonably likely to elicit an incriminating response, and therefore any inquiry must have been preceded by the Miranda warnings. Accordingly, the court shall recommend that Luckett's motion to suppress his statements regarding the clothes in the backseat of the minivan be granted.

(Recommendation [R. 21] at 5-6.)

I agree with the magistrate judge's analysis. Given the recent discovery of a box of ammunition amongst the clothes, an officer should know that a question about ownership of the clothes is likely to elicit an incriminating response. Even if, as the government argues, Ferguson's motive was to find out to whom the clothes belonged and should be released, the

6

proper focus is primarily upon the perceptions of the suspect, rather than the subjective intent of the police. See Innis, 446 U.S. at 301-02.[4]

The government notes that had the officers wanted to elicit an incriminating response they could have asked about the ammunition directly. The government further notes that the officers found the first box of ammunition between the front seats, not amongst any clothes, so there would be no reason for the officers to try to ensnare defendant with questions about the second box of ammunition found in the bag of clothes. However, this argument again focuses on the intent of the police, rather than the perceptions of the suspect. The issue is whether the questions posed were reasonably likely to elicit an incriminating response, not whether the police subjectively tried to trick defendant. Further, the fact that the police may have employed more direct means of getting defendant to inculpate himself does not mean that the questions they did ask were permissible. Finally, asking defendant a question likely to elicit an incriminating response tying him to one box of ammunition in the van may have also tended to link him to the other box discovered in that same vehicle.[5]

---

[4] At the supplemental hearing, Ferguson testified that he asked these questions because the officers were unsure what they were going to do about the van and the property within in. He denied that he was trying to get defendant to incriminate himself. (Jan. 23, 2012 Tr. at 25-26.) As stated in the text, even if I were to find this testimony credible, Ferguson's subjective motives do not control. It is also worth noting that while Ferguson claimed on direct examination at the supplemental hearing that he did not know defendant was a felon at the time he discovered the ammunition and asked about the clothes (id. at 27-28), on cross-examination, he admitted that he had run a wanted check and learned that defendant was on probation for a drug offense before he questioned defendant (id. at 42).

[5] The government cites United States v. Muriel, 418 F.3d 720, 725-26 (7th Cir. 2005), for the proposition that an officer may, after conducting a valid traffic stop, ask the vehicle's occupants "a moderate number of questions," even if those questions do not concern the purpose of the stop. Muriel was a Fourth Amendment case and did not address the Miranda issue before me. The government also cites United States v. Bustamante, 493 F.3d 879, 892 (7th Cir. 2007), but that case holds only that a request to search does not require Miranda

7

### III. CONCLUSION

**THEREFORE, IT IS ORDERED** that the magistrate judge's recommendation (R. 21) is adopted, as stated herein, and defendant's motion to suppress (R. 10) is **GRANTED.**

**IT IS FURTHER ORDERED** that this matter is scheduled for **FINAL PRE-TRIAL** on **Monday, February 27, 2012, at 11:00 a.m.**

Dated at Milwaukee, Wisconsin, this 21st day of February, 2012.

/s Lynn Adelman
_____
LYNN ADELMAN
District Judge

---

warnings.